**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("HHS-OIG") of the Department of Health and Human Services ("HHS") (collectively, the "United States"), and Defendants, Henry Goolsby, III, M.D. ("Dr. Goolsby"), Infinite Health Integrative Medicine Center Inc. ("Infinite Health") and Patricia Lenae Goolsby ("Mrs. Goolsby")(collectively, with the United States, referred to as "the Parties"), through their authorized representatives.

RECITALS

A. At all relevant times, Dr. Goolsby and Infinite Health were suppliers of services to beneficiaries of the United States' program of Health Insurance for Aged and Disabled, 42 U.S.C. §§ 1395-1395111 ("Medicare").

B. At all relevant times, Dr. and Mrs. Goolsby were co-founders of Infinite Health, with Dr. Goolsby serving as CEO and Mrs. Goolsby serving as COO. Dr. Goolsby is a licensed physician who, at all relevant times, practiced medicine at Infinite Health. At all relevant times, Infinite Health was located at 2002 West Walnut St., Ste. 2 in Lake Charles, Louisiana, 70611. Infinite Health opened a second location at 3900 Veterans Memorial Blvd, Ste. 204, Metairie, Louisiana, 70002, which will now be its only location. At all relevant times, the Defendants transacted business within the Western District of Louisiana.

C. On January 10, 2025, the Government filed a lawsuit in the United States District Court for the Western District of Louisiana captioned *United States v. Infinite Health Integrative Medicine Center Inc., Henry Goolsby, III, M.D. and Patricia Lenae Goolsby*, Dk. #25-cv-00036("the Action").

D. The United States contends that from November 2018 through April 2020, Defendants submitted or caused to be submitted one hundred and one claims for payment to Medicare using HCPCS code L8679, for which Defendants were paid for a total of $313,265. The underlying procedure for which Defendant submitted those claims involved Dr. Goolsby's application of a "P-Stim" device in an office setting. HCPCS L8679 is the code for an implantable neurostimulator and pulse generator. This device and procedure require the provider to perform surgery by making an incision on the patient's back and placing the leads (medical wires) that deliver the stimulation into the epidural space on the spinal cord. Payment for the surgical procedure requires the service to be performed in a surgery center. When billed in an outpatient center HCPCS L8679 is non-payable. P-Stim is a device that, pursuant to manufacturer's instructions, is affixed behind a patient's ear using an adhesive. Needles are inserted into the patient's ear and affixed using another adhesive. Once activated, the device then provides intermittent stimulation by electrical pulses. It is a single-use, battery-powered device designed to be worn for approximately four days until its battery runs out, at which time the device is thrown away. The United States Food and Drug Administration cleared P-Stim as an electro- acupuncture stimulator device. Medicare does not reimburse for acupuncture or acupuncture devices such as P-stim.

E. The United States contends that Defendants violated the civil False Claims Act, 31 U.S.C. § 3729(a)(1)(A), by submitting or causing the submission of one hundred and one claims to Medicare for payment under HCPCS code L8679, the code for implantable neurostimulators, from November 2018 through April 2020, totaling payments of $313,265. These claims, however, were false because they were actually for non-reimbursable P-Stim

devices. This conduct is referred to below as the "Covered Conduct."

F. With respect to the Covered Conduct, Defendants, collectively and individually, admit and acknowledge that these claims and the obligations and debts subject to this Agreement are not dischargeable in bankruptcy.

G. This Settlement Agreement is neither an admission of liability by the Defendants nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

**TERMS AND CONDITIONS**

1. Defendants shall pay to the United States Four Hundred Fifty Thousand Dollars ($450,000) ("Settlement Amount"), of which $313,265 is restitution, plus interest on the Settlement Amount at a rate of 3.875% accruing monthly from 7 days following the entry of a consent judgment in the Action until the date of payment, as follows:

a. The Defendants shall pay $10,000 within 7 days of the consent judgment in the Action by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Western District of Louisiana.

b. Defendants shall pay the remainder of the amount due as follows:
   i. For 24 months, beginning 30 days following the effective date of this Settlement Agreement, the Defendants shall pay the United States $3,500 per month plus interest by the fifth of each month;
   ii. For the next 24 months, the Defendants shall pay the United States $4,500 per month plus interest by the fifth of each month;
   iii. For the next 35 months, the Defendants shall pay the United States $7,000 per month plus interest by the fifth of each month; and
   iv. For the next month, the Defendants shall pay the United States $3,000 plus interest by the fifth of the month.

2. Subject to the exceptions in Paragraph 3 (concerning excluded claims),

Paragraph 4 (concerning disclosure of assets), Paragraph 11 (concerning default), and Paragraph 12 (concerning bankruptcy), and conditioned upon Defendants entering a consent judgment in the Action awarding the United States $450,000 and Defendants' full payment of the Settlement Amount, the United States releases Defendants from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud, and will file a Satisfaction of Judgment in the Action.

3. Notwithstanding the releases given in Paragraph 2 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b. Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

e. Any liability based upon obligations created by this Agreement.

4. Defendants have provided sworn financial disclosures and supporting documents (together "Financial Disclosures") to the United States and the United States has relied on the

accuracy and completeness of those Financial Disclosures in reaching this Agreement. Defendants warrant that the Financial Disclosures are complete, accurate, and current as of the Effective Date of this Agreement. If the United States learns of asset(s) in which Defendants had an interest of any kind as of the Effective Date of this Agreement (including, but not limited to, promises by insurers or other third parties to satisfy Defendants' obligations under this Agreement) that were not disclosed in the Financial Disclosures, or if the United States learns of any false statement or misrepresentation by Defendants on, or in connection with, the Financial Disclosures, and if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set forth in the Financial Disclosures by $45,000 or more, the United States may at its option: (a) rescind this Agreement and reinstate its suit based on the Covered Conduct or (b) collect the full Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the net value of Defendants' previously undisclosed assets. Defendants agree not to contest any collection action undertaken by the United States pursuant to this provision, and agrees that it will immediately pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected in the collection action, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States, pursuant to this paragraph rescinds this Agreement, Defendants waive and agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 120 calendar days of written notification to Defendants that this Agreement has been rescinded, and (b) relate to the Covered

Conduct, except to the extent these defenses were available on the effective date of this Settlement Agreement.

5. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

6. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, and its agencies, officers, agents, employees, and servants related to the Covered Conduct and the United States' investigation and prosecution thereof.

7. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to *any* Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

8. Defendants agree to the following:

a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social

Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

(l) The matters covered by this Agreement and the Consent Judgment in the Action;

(2) The United States' audit(s) and civil investigation(s) of the matters covered by this Agreement and the Consent Judgment in the Action;

(3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement and the Consent Judgment in the Action (including attorney's fees);

(4) The negotiation and performance of this Agreement and the Consent Judgment in the Action; and

(5) The payments Defendants make to the United States pursuant to this Agreement and the Consent Judgment in the Action

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program ("FEHBP") (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for in non-reimbursable cost centers by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or

FEHBP Programs.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Defendants further agree that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously submitted cost reports, information reports, cost statements. or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants' or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

9. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 10 (waiver for beneficiaries paragraph), below.

10. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third-party payors based upon the claims defined as Covered Conduct.

11. The Settlement Amount represents the amount the United States is willing to accept in compromise of its civil claims arising from the Covered Conduct due solely to Defendants' financial condition as reflected in the Financial Disclosures referenced in Paragraph 4.

a. In the event that Defendants fail to pay the Settlement Amount as provided in the payment schedule set forth in Paragraph 1 above, Defendants shall be in Default of Defendants' payment obligations ("Default"). The United States will provide a written Notice of Default, and Defendants shall have an opportunity to cure such Default within seven (7) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. Notice of Default will be delivered to Defendants, or to such other representative as Defendants shall designate in advance in writing. If Defendants or any of them fail to cure the Default within seven (7) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately

due and payable from any of the Defendants, who are jointly and severally liable on the payment obligations as they were under the False Claims Act, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b. In the event of Uncured Default, Defendants agree that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the Civil Action or bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 2 above with any recovery reduced by the amount of any payments previously made by Defendants to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action or by reinstating the Civil Action; (iii) offset the remaining unpaid balance from any amounts due and owing to Defendants and/or affiliated companies by any department, agency, or agent of the United States at the time of Default or subsequently; and/or (iv) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity. The United States shall be entitled to any other rights granted by law or in equity by reason of Default, including referral of this matter for private collection. In the event the United States pursues a collection action, Defendants agree immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action. In the event that the United States opts to rescind this Agreement pursuant to this paragraph, Defendants waive and agree not to plead, argue, or otherwise raise any defenses of statute of limitations, laches, estoppel or similar

theories, to any civil or administrative claims that are (i) filed by the United States against Defendants within 120 days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were available on the effective date of this agreement. Defendants agree not to contest any offset, recoupment, and /or collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States.

c. In the event of Uncured Default, OIG-HHS may exclude Defendants from participating in all Federal health care programs until Defendants pay the Settlement Amount, with interest, as set forth above (Exclusion for Default). OIG-HHS will provide written notice of any such exclusions to Defendants. Defendants waive any further notice of the exclusions under 42 U.S.C. § 1320a-7(b)(7) and agree not to contest such exclusions either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the periods of exclusion, the Defendants wish to apply for reinstatement, they must submit written requests for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Defendants will not be reinstated unless and until OIG-HHS approves such requests for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

12. In exchange for valuable consideration provided in this Agreement, Defendants acknowledge the following:

a. Defendants have reviewed their individual and corporate financial situations and warrant that they are not insolvent within the meaning of 11 U.S.C. §§ 547(b)(3) and

548(a)(1)(B)(ii)(I) and shall remain solvent following payment to the United States of the Settlement Amount.

b. In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Defendants, collectively and individually, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

c. The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

d. The Parties do not intend to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

e. If any of Defendants' payments or obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, Defendants or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Defendants' debts, or to adjudicate any of the Defendants as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for any of the Defendants or for all or any substantial part of any of the Defendants' assets:

(i) the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 2 above; and

(ii) the United States has an undisputed, noncontingent, and liquidated allowed claim against any of the Defendants in the amount of $3,668,512 less any payments received pursuant to Paragraph 1 of this Agreement, provided, however, that such payments are not otherwise avoided and recovered from the United States by Defendants, a receiver, trustee, custodian, or other similar official for Defendants.

f. Defendants agree that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 12(e) is not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory power. Defendants shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1). Defendants waive and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Defendants that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on the effective date of this Agreement.

13. This Settlement Agreement is conditioned upon an entry of a consent judgment in the Action. If the district court denies the United States' Rule 58 Motion for Entry of Consent

Judgment or otherwise refuses to enter a consent judgment, this Settlement Agreement is null and void.

14. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

15. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Louisiana. For purposes of construing this Agreement. this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

21. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

22. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date of this Agreement"). Facsimiles and electronic transmissions of

signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

ALEXANDER C. VAN HOOK
ACTING UNITED STATES ATTORNEY

DATED __________ BY: MELISSA THERIOT Digitally signed by MELISSA THERIOT Date: 2025.02.24 09:18:53 -06'00'

MELISSA L. THERIOT (#22628)
Assistant United States Attorney
Western District of Louisiana
Attorney for Plaintiff United States of America

DATED: __________ BY: LISA RE Digitally signed by LISA RE Date: 2025.02.07 07:52:28 -05'00'

SUSAN E. GILLIN
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DEFENDANTS , INFINITE HEALTH INTEGRATIVE MEDICINE CENTER, INC, HENRY GOOLSBY, III, M.D., AND PATRICIA LENAE GOOLSBY

DATED __________ BY: ______________________________
Henry or Patricia Goolsby for
Infinite Health Integrative Medical Center

DATED __________ BY: ______________________________
Henry Goolsby, III, M.D.

ALEXANDER C. VAN HOOK
ACTING UNITED STATES ATTORNEY

DATED __________ BY: ______________________________
MELISSA L. THERIOT (#22628)
Assistant United States Attorney
Western District of Louisiana
Attorney for Plaintiff United States of America

DATED: __________ BY: ______________________________
SUSAN E. GILLIN
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DEFENDANTS , INFINITE HEALTH INTEGRATIVE MEDICINE CENTER, INC, HENRY GOOLSBY, III, M.D., AND PATRICIA LENAE GOOLSBY

DATED 2/17/25 BY: [signature] for Infinite Health
Henry or Patricia Goolsby for
Infinite Health Integrative Medical Center

DATED 2/17/25 BY: [signature]
Henry Goolsby, III, M.D.

DATED 2/17/25 BY: [signature] as COO
Patricia Lenae Goolsby

DATED 02/20/2025 BY: [signature]
Alec Alexander
Attorney for Defendants